

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.  )
ROMALICE SHAVERS,              )
                              )
        Petitioner,        )
                              )      **No. 13 C 151**
     v.                )
                              )      **Chief Judge Ruben Castillo**
GEORGE GOOD, Warden,     )
                              )
        Respondent.     )

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Romalice Shavers ("Petitioner") is serving a 14-year sentence for home invasion, aggravated criminal sexual assault, and unlawful restraint. Petitioner is currently in the custody of George Good ("Respondent"), the warden of Taylorville Correctional Center.[1] Presently before the Court is Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"). For the reasons stated below, the Court denies the Petition and declines to issue a certificate of appealability.

---

[1] When Petitioner first filed his federal habeas petition, he was incarcerated at Big Muddy River Correctional Center, where Zach Roeckeman is the warden. Petitioner is currently incarcerated at Taylorville Correctional Center, where George Good is the warden, so Good is automatically substituted as the named respondent in this case pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND[2]

On January 18, 2006, Petitioner was arrested at his home after his former girlfriend, C.M., called the police and reported that Petitioner had entered her home without permission earlier that day and sexually assaulted her. *People v. Shavers*, No. 1-09-0404, 2011 WL 9685828, at *1 (Ill. App. Ct. 1st Dist. Jun. 1, 2011). Petitioner was taken to Area One police headquarters. *Id.* While in custody, he gave a statement to Detective Anthony Flowers of the Chicago Police Department and Assistant State's Attorney (ASA) Meg O'Sullivan, which ASA O'Sullivan put into a writing that was signed by Petitioner. *Id.* Petitioner was charged in a five-count indictment with home invasion in violation of 720 ILCS 5/12-11(a)(6), two counts of aggravated criminal sexual assault in violation of 720 ILCS 5/12-14(A)(1) and 14(A)(4), criminal sexual assault in violation of 720 ILCS 5/12-13(A)(1), and unlawful restraint in violation of 720 ILCS 5/10-3. *Id.* at *2.

## I.    Pre-trial Proceedings

Petitioner pleaded an affirmative defense that C.M. had consented to their sexual encounter on January 18, 2006. *Id.* On November 2, 2006, Petitioner filed a motion to suppress his statement to the police, which the trial court in the Circuit Court of Cook County, Illinois, denied. *Id.* On March 9, 2007, Petitioner filed a motion *in limine* seeking to cross-examine C.M. about her prior sexual history with him and to permit him to introduce evidence of his prior

---

[2] In reviewing a petition for federal habeas corpus relief, the court must presume that the state court's factual determinations are correct unless the petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The Court therefore adopts the recitation of the facts set forth in the Illinois appellate court's order denying Petitioner's appeal of his conviction, *People v. Shavers*, No. 1-09-0404, 2011 WL 9685828 (Ill. App. Ct. 1st Dist. Jun. 1, 2011). The facts regarding the procedural history of this case come from the Petition and the state court record that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

sexual history with C.M. *Id.* Specifically, Petitioner sought to elicit testimony and evidence showing that he and C.M. had a 12-year relationship, dating from 1995 to the date of the incident, and that they had sex at C.M.'s home several times a month, most recently in early January 2006, and three or four times in December 2005. *Id.* In response, the State acknowledged that C.M. and Petitioner had been involved in a relationship that began in 1995 and ended in May 2005. (R. 15, Ex. B, Proceedings on Mot. *in Lim.* at C48.) The State also acknowledged that C.M. had two sexual encounters with Petitioner between May 2005 and January 2006—once in late November 2005, and once in early December 2005. *Shavers,* 2011 WL 9685828, at *2. The State asserted that those encounters were not consensual, however, and that on those occasions, as on January 18, 2006, Petitioner had forced C.M. into a chair and had sex with her against her will. *Id.* The State asked the court to deny the motion *in limine* or, in the alternative, to permit C.M. to testify about the sexual encounters in November 2005 and December 2005. *Id.*

The trial court held a hearing on Petitioner's motion *in limine* on May 22, 2008, and issued its ruling on June 30, 2008. *Id.* at *3. The court held that the defense could present evidence and question C.M. about her and Petitioner's relationship from 1995 to May 2005. (R. 15, Ex. B, Proceedings on Mot. *in Lim.* at GG4-5.) The court also held that the defense could question C.M. about whether she had sex with Petitioner in December 2005 and early January 2006, and whether that sex was consensual. (*Id.* at GG9.)

## II.     Trial

The one-day bench trial was held on October 16, 2008. *Shavers,* 2011 WL 9685828, at *3. C.M. testified that on January 18, 2006, she woke up some time between 11:00 a.m. and 12:00 p.m. and saw Petitioner standing over her in her bedroom. *Id.* She said that she was

surprised to see Petitioner because he did not have a key or permission to enter her house. *Id.*

She asked Petitioner how he had gotten in and he told her that he had come in through the back

door. *Id.* C.M. testified that Petitioner attempted to get into bed with her, and she tried to push

him out and asked him to leave. *Id.* Petitioner asked C.M. if he could use her telephone, and she

consented. *Id.* After Petitioner finished making his call, C.M. asked him to leave again, but he

refused. *Id.* When she tried to walk Petitioner toward her bedroom door, he grabbed her and she

hit him in the head with the telephone. *Id.* C.M. said that she and Petitioner tussled in the

hallway, and then Petitioner pushed her into her daughter's bedroom and threw her down on an

air mattress. *Id.* Petitioner got on top of her and put his arm on her chest. *Id.* C.M. told

Petitioner that she could not breathe, and he eventually let her go. *Id.* C.M. testified that she

then went toward the stairs and Petitioner came up behind her and tried to grab her around the

neck. *Id.* Petitioner tried to pin her down and C.M. told him that if he let her go, she would have

sex with him. *Id.* Once Petitioner let C.M. go, she ran toward the stairs, but Petitioner caught

her and they again began to tussle. *Id.* When they finally got down the stairs, Petitioner threw

her onto a chair in the living room. *Id.* C.M. said that her back was to the chair and Petitioner

held her down with his forearm across her chest. *Id.* C.M. testified that she was only wearing a

robe and that Petitioner unzipped his pants and put his penis into her vagina. *Id.* C.M. said that

Petitioner was not wearing a condom, and he ejaculated inside of her and then went into the

bathroom. *Id.*

C.M. testified that she ran to the phone and called 911. *Id.* at *4. Petitioner then came

back into the room and hung up the phone. *Id.* The 911 operator called back, and while C.M.

was on the phone with the operator, Petitioner went into the kitchen, picked up a knife, and

threatened to kill himself. *Id.* C.M. hung up the phone and ran out of her house. *Id.* She stood

4

in front of her house waiting for the police to arrive and then went across the street to her neighbor's house. *Id.* C.M. testified that she told her neighbor what had happened and that about 10 to 15 minutes later, she and her neighbor returned to C.M.'s house and Petitioner was gone. *Id.* When the police arrived, C.M. told them what Petitioner did and where he lived. *Id.* C.M. then went to the hospital where a sexual assault kit was performed. *Id.*

On cross-examination, C.M. acknowledged that she began dating Petitioner in 1995, and that she knew that he had several children with other women. *Id.* She also acknowledged that in August 2004, Petitioner became engaged to someone else, and eventually got married, and during that time she continued to have a sexual relationship with him. *Id.* When defense counsel asked C.M. whether she continued to have a sexual relationship with Petitioner after he got married, the State objected, stating that counsel's question was "hitting what [the parties] litigated in the motion, which . . . [the court] stated would not be allowed to come out until [Petitioner] actually testified and brought it out." *Id.* (quoting the trial transcript). The court sustained the objection. *Id.* Later during cross-examination, defense counsel asked C.M. if she continued to have a sexual relationship with Petitioner after she broke off their relationship in May 2005, and the State objected again, referring to the motion *in limine*. *Id.* The court again sustained the objection. *Id.*

The State called ASA O'Sullivan and presented Petitioner's written statement. *Id.* In his statement, Petitioner stated that he and C.M. had been in an eight- to ten-year relationship that ended in May 2005, but that he continued to call her and try to see her after the relationship ended. *Id.* at *1. He stated that on the morning of January 18, 2006, he was driving around in his car after spending the previous night drinking beer until 4:00 a.m. *Id.* At approximately 10:30 a.m., he decided to go to C.M.'s house because he wanted to have sex with her. *Id.* He

stated that he entered her house through the back door without permission and went upstairs to her bedroom, where she was sleeping. *Id.* The rest of Petitioner's statement is largely consistent with C.M.'s testimony. *Id.* at *1-*2. Petitioner added that he drove to work after he left C.M.'s house through the back door. *Id.* at *2.

After the State rested its case, Petitioner moved to call C.M. as an adverse witness to ask her questions about her sexual relationship with Petitioner just prior to January 18, 2006. *Id.* at *5. The State objected, stating that "by law they cannot ask her under [Rape] Shield the questions about her sexual past with [Petitioner] without [Petitioner] testifying that it was based on consent first." *Id.* (quoting the trial transcript). The court sustained the State's objection, stating that questions regarding C.M.'s sexual relationship with Petitioner immediately prior to January 18, 2006, "may be relevant if [Petitioner] testifies and puts—and makes that of record, but at this point that's what it's going to take." *Id.* (quoting the trial transcript). Petitioner decided not to testify and, since the defense had no additional witnesses, the parties proceeded to closing arguments. *Id.* The trial court found Petitioner guilty of home invasion (count I), aggravated criminal sexual assault (count III), criminal sexual assault (count IV), and unlawful restraint (count V). *Id.*

On November 13, 2008, Petitioner filed a motion for a new trial, claiming, *inter alia*, that the trial court erred in sustaining the State's objections to questions defense counsel asked C.M. regarding her prior sexual history with Petitioner. (R. 15, Ex. D, Mot. New Trial at 1.) The trial court denied Petitioner's motion. *Shavers*, 2011 WL 9685828, at *5. The court merged count IV into count III and gave Petitioner credit for 1109 days spent in pre-sentence custody. *Id.* The trial court sentenced Petitioner to concurrent sentences of 14 years on counts I and III and 3

years on count V. *Id.* Petitioner filed a motion to reconsider sentence, which the trial court denied. *Id.*

## III.    Direct Appeal

Petitioner appealed his conviction to the Illinois Appellate Court for the First District, raising the following issues that are relevant to his habeas petition: (1) whether the trial court violated its ruling on Petitioner's pretrial motion *in limine*, Illinois's Rape Shield statute, and Petitioner's Sixth Amendment rights to confront witnesses against him and to present a defense when it prevented him from cross-examining C.M. about whether she continued a sexual relationship with him in November 2005, December 2005, and January 2006; and (2) whether the trial court violated his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel, as contemplated by *Brooks v. Tennessee*, 406 U.S. 605 (1872), when it refused to call C.M. as an adverse witness unless Petitioner first testified that the encounter on January 18, 2006 was consensual. *Id.* at *6, *8-*9; (R. 15, Ex. E, Pet'r's Br. at 2, 24-26.)

The Illinois appellate court agreed with Petitioner that the trial court violated the Rape Shield statute and its ruling on Petitioner's motion *in limine*, and that Petitioner was denied his Sixth Amendment rights to confront witnesses against him and to present his defense of consent. *Shavers*, 2011 WL 9685828, at *7. The court held, however, that the trial court's error in refusing to permit Petitioner to cross-examine C.M. was harmless beyond a reasonable doubt "because the evidence of [Petitioner's] guilt was overwhelming." *Id.* at *8.

Additionally, the appellate court found that Petitioner did not properly preserve his claim that the trial court committed an error when it refused to call C.M. as an adverse witness unless Petitioner testified first because Petitioner did not object to the error at trial or specifically raise the error in his motion for a new trial. *Id.* The appellate court therefore reviewed Petitioner's

7

claim for plain error. *Id.* The court agreed with Petitioner that the trial court had erred and violated *Brooks* by restricting Petitioner's right to remain silent and penalizing him for exercising that right by precluding him from calling C.M. as an adverse witness. *Id.* at *9. The court explained, however, that under the plain error doctrine, automatic reversal is required only when an error is deemed structural, and the court found that "the trial court's denial of [Petitioner's] request to call [C.M.] as an adverse witness does not fall within the very limited category of structural errors and, thus, does not require automatic reversal and is amenable to harmless error review." *Id.* at *10. Finding the trial court's error harmless beyond a reasonable doubt, the appellate court affirmed Petitioner's conviction on June 1, 2011. *Id.* at *10, *13.

On July 1, 2011, Petitioner filed a petition for leave to appeal to the Illinois Supreme Court, claiming that the trial court's error in requiring him to testify as a precondition to calling C.M. as an adverse witness was a structural error, or, alternatively, was not harmless. (R. 15, Ex. I, PLA at 2.) On September 28, 2011, the Illinois Supreme Court denied the petition for leave to appeal. (R. 15, Ex. J, Order Denying PLA.) On December 13, 2011, Petitioner filed a petition for a writ of certiorari to the United States Supreme Court, presenting the issue of whether Fifth, Sixth, and Fourteenth Amendment violations as contemplated by *Brooks* constitute structural errors in which prejudice is presumed. (R. 1, Pet. Writ Habeas at 3.) His petition for writ of certiorari was denied by the Supreme Court on February 21, 2012. (*Id.*)

## IV.    Habeas Petition

On January 10, 2013, Petitioner filed with this Court the instant petition for writ of habeas corpus. (*Id.*) Petitioner argues that the trial court denied his Sixth Amendment right to counsel, as contemplated by *Brooks*, when it refused to allow Petitioner to call C.M. as an adverse witness unless he testified first, and that this constitutional error was structural and *per*

8

*se* reversible. *(Id.* at 11.) Respondent answered the Petition on April 4, 2013, arguing that the Court should deny Petitioner relief for three reasons: (1) Petitioner's claim is procedurally defaulted because the Illinois appellate court deemed it forfeited under state law; (2) even if his claim was not defaulted, the appellate court's holding that the alleged error was not structural was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; and (3) even if the error Petitioner complains of was structural, Petitioner has failed to show a deprivation of his right to counsel. (R. 14, Resp't's Answer at 12.) Petitioner replied to Respondent's answer on April 26, 2013. (R. 16, Pet'r's Reply). The Petition is currently before the Court.

## LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To obtain relief, a petitioner must show that the state court's proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this deferential standard, the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). "[C]learly established Federal law" under section 2254(d)(1) "consists of 'the holdings, as opposed to the dicta,'" of the Supreme Court's cases. *Wong v. Smith*, 131 S. Ct. 10, 11 (2010) (quoting

*Williams*, 529 U.S. at 412). A state court decision is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405). A state court decision is "an unreasonable application of" clearly established federal law "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams*, 529 U.S. at 407-08). "An 'unreasonable application' of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one." *Wong*, 131 S. Ct. at 11 (citing *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Before a district court can consider a petitioner's claims, the petitioner must "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009) (alteration in original) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010) (A habeas petitioner must give state courts an opportunity to resolve his constitutional claims "by invoking one complete round of the state's established appellate review process." (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999))). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) (citing *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004)). "A procedural default also occurs when a state court disposes of a claim on an independent and adequate state law ground."

10

*Johnson v. Loftus*, 518 F. 3d 453, 455 (7th Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)). Procedural default precludes federal court review of a petitioner's habeas claims. *Johnson*, 559 F.3d at 752.

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice caused by the alleged violation of federal law or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *Coleman*, 501 U.S. at 750). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" that "impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show actual prejudice, a petitioner must demonstrate that the alleged violation infected the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *U.S. v. Frady*, 456 U.S. 152, 170 (1982)); *see also Smith*, 598 F.3d at 382. A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Coleman*, 501 U.S. at 748 (quoting *Murray*, 477 U.S. at 496); *see also Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002).

## ANALYSIS

Respondent argues that Petitioner's claim is procedurally defaulted because the Illinois appellate court held that Petitioner had forfeited his Sixth Amendment claim by failing to object to the trial court's ruling on Sixth Amendment grounds at the time of trial and failing to raise this issue in his post-trial motion. (R. 14, Resp't's Answer at 12.) Specifically, Respondent contends that the Illinois appellate court decided Petitioner's Sixth Amendment claim on independent and adequate state procedural grounds, and therefore habeas relief is barred. (*Id.* at 13)

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729). A state-law ground is considered "independent" for this purpose "only if the state court actually relied on a state rule sufficient to justify its decision." *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005) (quoting *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990)). A state-law ground is deemed "adequate" "only if the state court applies the rule 'in a consistent and principled way.'" *Id.* (quoting *Prihoda*, 910 F.2d at 1383). "[W]hen a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) (citing *Cone*, 556 U.S. at 465). A finding of waiver or forfeiture by the state court is enough to establish an independent and adequate state ground. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) (citing *Daniels v. Knight*, 476 F.3d 426, 431 (7th Cir. 2007)). Such waived or forfeited claims "are commonly referred to as being procedurally defaulted." *Woods*, 589 F.3d at 373; *see also Daniels*, 476 F.3d at 431.

To avoid waiver in Illinois, "a defendant must both contemporaneously object at trial and include the specific alleged error in a written post-trial motion." *People v. Ramos*, 742 N.E.2d 763, 769 (Ill. App. Ct. 1st Dist. 2000) (citing *People v. Enoch*, 522 N.E.2d 1124, 1130 (Ill. 1988)); *see also Miranda*, 394 F.3d at 995 (noting that "the rule requiring that all issues for appeal be preserved in a written post-trial motion is solidly established in Illinois law" (quoting *White v. Peters*, 990 F.2d 338, 340 (7th Cir. 1993))). Thus, a petitioner who failed to raise an

issue both at trial and in a post-trial motion has waived that issue and cannot raise it in his habeas petition. *Miranda*, 394 F.3d at 997.

Here, there is no dispute that Petitioner failed to object on Sixth Amendment grounds at trial to the trial court's ruling requiring Petitioner to testify before he could call C.M. as an adverse witness and failed to raise this issue in his post-trial motion. (R. 1, Pet. Writ Habeas at 11; R. 14, Resp't's Answer at 12.) The Illinois appellate court consequently found that Petitioner had waived this claim. *Shavers*, 2011 WL 9685828, at *8 ("To preserve a claim of error for review, counsel must object to the error at trial and raise the error in a motion for a new trial before the trial court. . . . [Petitioner] did not properly do either in this case . . . ."). The Illinois appellate court's holding that Petitioner had waived his Sixth Amendment claim rests on an independent and adequate state ground, and this Court concludes that Petitioner's claim is procedurally defaulted. *See Sturgeon*, 552 F.3d at 611; *Woods*, 589 F.3d at 373.

The Illinois appellate court's review of Petitioner's claim for plain error does not undermine its holding that Petitioner had waived his Sixth Amendment claim. In *Miranda*, the Seventh Circuit held that "an Illinois court does not reach the merits of a claim simply by reviewing it for plain error" and so "the plain-error analysis engaged in by the appellate court did not cure [the petitioner's] default." 394 F.3d at 992; *see also Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003) ("[A] state court's 'review for plain error does not cure a procedural default.'" (quoting *Thomas v. Gilmore*, 144 F.3d 513, 518 (7th Cir. 1998))); *Brooks v. Walls*, 279 F.3d 518, 523 (7th Cir. 2002) ("[I]t is settled (at least in this circuit) that a plain-error exception to a procedural rule does not compromise that rule's quality as an independent ground of decision."). Therefore, the Illinois appellate court's review of Petitioner's claim for plain error does not govern against the Court's finding that his claim is procedurally defaulted and therefore

barred from federal review. *See Miranda*, 394 F.3d at 997; *see also Dixon v. Hardy*, No. 10 C 06727, 2013 WL 5518902, at *4 (N.D. Ill. Oct. 4, 2013) (finding that despite plain error review, the state court's determination that petitioner had forfeited two of his claims was both independent and adequate and therefore federal review of those claims was barred by procedural default).

In an effort to avoid this result, Petitioner argues that the Illinois appellate court's decision did not rest on "an independent and adequate state ground" but was instead "interwoven with those [federal] claims." (R. 16, Pet'r's Reply at 12) (quoting *Coleman*, 501 U.S at 735). The Supreme Court stated in *Coleman* that "if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the [habeas] petition." 501 U.S. at 735. Petitioner argues that the second prong of the Illinois plain error rule is coextensive with federal structural error and "a correct application by the Illinois Appellate Court of clearly established federal law that the error here was structural error would have plucked [Petitioner's] claim out of the quicksand of default and harmlessness and planted it on the solid ground of plain error and automatic reversal – as a matter of *Illinois* law." (R. 16, Pet'r's Reply at 12.) Petitioner's argument that the Illinois appellate court's decision was interwoven with federal claims, however, is inaccurate. As explained above, the Seventh Circuit has repeatedly held that a finding of waiver by the state court is enough to establish an independent and adequate state ground. *Sturgeon*, 552 F.3d at 611 (citing *Daniels*, 476 F.3d at 431); *Miranda*, 394 F.3d at 997. Here, the Illinois appellate court found that Petitioner had waived his Sixth Amendment claim. And even though during the appellate court's review of Petitioner's claim for plain error it

14

considered whether federal structural error had occurred, that does not make its decision on *waiver* interwoven with federal claims. The appellate court's plain error analysis is irrelevant to this Court's determination that the appellate court's finding of waiver rested on an independent and adequate state ground. *See Miranda*, 394 F.3d at 992.

Additionally, Petitioner argues that his "entire claim is that his [procedural] default is excused because the Sixth Amendment *Brooks* violation was federal structural error, which in turn is plain error under Illinois law." (R. 16, Pet'r's Reply at 10.) Petitioner once again misinterprets the law. The plain error doctrine under Illinois law cannot excuse his procedural default for purposes of federal habeas review. *See Miranda*, 394 F.3d at 992. Petitioner can, however, overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *Smith*, 598 F.3d at 382 (citing *Coleman*, 501 U.S. at 750). But Petitioner has asserted no cause for his failure to raise his Sixth Amendment claim at the required time, nor has he shown that his trial was tainted by "error of constitutional dimensions." *See Murray*, 477 U.S. at 494. Indeed, Petitioner's own statement virtually matched C.M.'s testimony and served as strong corroboration of his guilt of all of the charged offenses. Petitioner had an opportunity to cross-examine C.M. at his trial and was not unduly prejudiced by not being allowed to recall her as an adverse witness. Petitioner has also failed to demonstrate that he is "actually innocent of the crime" and therefore the Court's refusal to consider his defaulted claim would result in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Coleman*, 501 U.S. at 748 (quoting *Murray*, 477 U.S. at 496)). In fact, Petitioner states that he "has not made and does not here make any claims based on those legal theories." (R. 16, Pet'r's Reply at 10.) Accordingly, the Court finds that

Petitioner's procedural default is not excused, and consequently, the Court cannot review his Sixth Amendment claim.

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Where a district court dismisses a habeas petition on procedural grounds without reaching the merits of the underlying constitutional claims, a certificate of appealability should issue only if the petitioner shows that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, no reasonable jurist could find that Petitioner's claim is not procedurally defaulted, and thus "no appeal would be warranted." *Id.* ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, the Court will not issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus (R. 1) is

DENIED and the Court declines to issue a certificate of appelability.

ENTERED: _____
**Chief Judge Ruben Castillo**
**United States District Court**

**Dated: April 8, 2014**